Number 10-07-64, Laura Rine v. State Farm Insurance. All right, counsel, on behalf of the appellant. May it please the court, counsel, my name is Doug Petrovich. I represent Laura Rine on this matter. We're before the court regarding an appeal of the trial court's granting of a summary judgment motion from State Farm, which argued that there was not proper notice to the U.N. carrier without a specific reference to the word arbitration. From the outset, I will concede that the word arbitration was not used by Laura Rine. Laura Rine's position is that State Farm was properly and timely put on notice that the only means of resolving a U.N. claim is by arbitration. I don't understand that. Are you saying that no suit can be filed in this case by her against her insurer? A suit can be filed as well, but in this case. But no suit, would you concede that if any suit were to be filed, it had to be filed within two years? Correct. So really the only thing that could have happened in this case is arbitration or no arbitration? Correct. Now, this is a three-man panel, not the American Arbitration Association. So when you file the three-man panel, you have to send a letter with the name of your arbitrator. Isn't that how it starts? Correct. Did you have one in mind? Did you inform State Farm of one? I did not. So you didn't have an arbitration? In the back of my mind, I've used several in the past, but I did not inform State Farm. That is correct, either by writing or verbally. So do you believe that if you send them a letter or a notice of attorney's lien, that that's proper notification and you could wait forever to give them the name of your arbitrator? No, I think under the facts of this case, the notification came within the two-year time frame of the accident. Upon receiving the notification, there has to be, based on State Farm's policy, an agreement whether or not the insured was legally entitled to collect damages from the motor vehicle driver that was at fault here, and two, in what amount. Where does it say that in the policy? Doesn't it say that you have to file arbitration within two years? Doesn't the policy say that? Is the word commenced? Commenced, which upon reading the policy, I see no definition for the word commenced under State Farm's policy. Then we'd look at a regular old dictionary, and that means begin. That is correct. So was there an arbitration that was begun? I don't know, whatever. I mean, isn't the beginning of an arbitration, you submit your arbitrator. They submit theirs, and then the two of you have to agree on a third, or you have to go to court to get a name of a third arbitrator. Isn't that the way the process has always worked? Absolutely. So why is this different here? I believe that the process of commencing this arbitration was when they were put on notice that it was Laura Ryan's intention to proceed with a U.M. claim. Okay, but my question to you, if that is your belief, then how long of a period of time do you believe you have until you have to give them the name of your arbitrator? I mean, can you wait 100 years? Can you wait 10 years? I mean, how many years do you have to wait? I've always done it with an immediate follow-up letter, although I will indicate that I did not use the word arbitration in this letter. When I put them on the – No, but you're not answering my question. You're saying that the arbitration process starts when you send them a notification. Let's assume that you're correct, okay? Let's say I buy into that. Now, the next question is, how long do you have before you submit to them an arbitration? Because that's your obligation under the policy. You have to submit to them the name of your arbitrator. That's what a three-man panel is. So how long do you have now to do that? I don't believe that there is any policy language that sets forth a certain deadline. Okay, so you can wait forever. I mean, if there's no deadline, then I guess you could wait forever. I suppose you could, but I think a reasonable – Okay, but if that's the case, would that be logical? Wouldn't that be absurd? If you were to wait 100 years, absolutely. Well, would any great period be absurd? It would be. It would be. I mean, it wouldn't make any sense, would it? Correct. It would lack the diligence that every attorney should have in zealously protecting the rights of their client. Maybe it could be phrased in another way. How could you possibly ever enforce that right to arbitration if there is no time element involved in this? Many times the issue of whether there should be an arbitration or not doesn't come until after the two-year period when you can determine those first two issues, which the policy calls for, which is to determine whether the insurer is legally able to collect damages and is there agreement on. How do those issues get resolved when the accident involved an unidentified person? Isn't that what happened here? It was a hit and run. It was a hit and run. So how could that ever get resolved in terms of liability on the other party when you have no other party? It proves it difficult. Anyway, let me get to the heart of this matter, and that is the judge said that our judge questioned whether this case was controlled by first district cases or whether it was controlled by the fifth district case. And the judge said, I'm going with the first district. Why do you think he made a mistake there? Well, I think to quote him verbatim, I think he indicated he's making a, I believe he said a razor-tight decision here. It was a very close call. I believe I cite the two cases, Schmidt v. Ameritech, the 2002 first district case, which says that a decision of an appellate court should be binding on all circuit courts. But you understand the predicament he thought he was in, that is, having conflicting decisions in the first district and a, well, decisions in the first district that control the outcome in this case, and a conflicting decision in the fifth district, what is the circuit court to do in the first district? Should he ignore what the first district has decided and go with the fifth district, or should he follow what was in the first district? I don't think he should ignore the first district, obviously, but I think he should take case law from other districts and making a decision based on the totality of the facts and the law that's in not only his district, but other districts as well. Well, we're reviewing this de novo, so it really doesn't matter what he decides, does it? I apologize, I didn't hear the first part. Aren't we reviewing this de novo? Correct. There's a summary judgment entered against Laura Ryan. Correct. Let me ask you this. Is this one of those cases where the insured was dealing with the State Farm? Were you involved in negotiations about the coverage, or was it just the letter and we have nothing else? I believe it was the letter and nothing else. If there were ongoing negotiations and back and forth, then she'd be put in a spot, true? You could argue estoppel, you could argue that there was a negotiation, so she wasn't in a position to arbitrate, or at least demand. The only thing I can in good faith remember is making phone calls prior to that two-year. Were they post the letter? After the letter, were there discussions going on? After the letter? Yes. No, I made calls but got no return phone calls back, and that's when I filed. Got no re-phone, no? None. And you filed the suit? Correct. And that was after the two years? Correct. I just want to get the date of the letter out. Sure. When was it? The date of the letter, this happened on April 5th of 2000. Let's talk about in terms of just how many days before the expiration of the two-year period. I believe it was approximately a week, and I faxed it over and then sent it certified mail. Did you ever send them your items of special damages? No. I had no luck communicating with this adjuster. The adjuster was taking a hard, firm line with me. But ultimately State Farm gave you an answer? Correct, after the two years. Have you ever dealt with a substandard insurance company who never returns any calls? Many times. Who acknowledges your liens? But your letter was five days before the expiration of the two years? Correct. And Hale supports you, you believe? The Hale decision? From the Fifth District. That supports your position? Correct, based on How do you distinguish Shelton, though, for us? Sure. Or should we just ignore it? Well, Shelton is a First District case from 1987. I believe in that case the court never ruled whether or not the issue wasn't preserved at the trial level, whether or not the attorney's lien was valid notification, so the appellate court never ruled on that issue at its level. Also in that case, there was specific language asking for a written demand, which is different, I believe, than the specific language in this case in terms of this policy. I believe that language is a little bit more stringent and enforceable than the language that State Farm has in this policy. That's how I would distinguish it. All right. You can wrap up, and we'll give you a couple minutes to argue after. Sure. And I would also distinguish the case of Buccalo in 1980, a First District case that counsel references. Once again, in that case... And just so it's clear, the trial judge did follow either Buccalo or Shelton. He relied on those two cases in deciding. Correct. And granting summary judgment to State Farm. Correct. Primarily those two cases. Okay. In Buccalo as well, the 1980 First District case, there also had to be a written demand prior to the two years. The formal notice of the arbitration was after the two years, which I think the facts are distinguishable here. A request for arbitration wasn't made prior to the two years. I'm not arguing that one week later or one day later I made the request for an arbitration to resolve this matter. Lastly, I think that one of the most important things here is, aside from those two cases that the trial court relied on, is whether or not State Farm suffered a prejudice or some type of real or substantive inequity by being put on notice one week prior to the two years. I'm sorry. Is there any requirement that they show prejudice? There's not. All right. But if you're going to argue prejudice, you'd have to be able to tell us in the record what your injuries were and things of that nature, which you didn't do. Well, counsel, in their reply, in their response, indicate that this is akin to litigation. When you file a lawsuit, that is putting the defendant on notice that you're suing them in that two-year statute of limitations. Now, counsel refers to stale evidence and deceased parties. Once you put the other side of the defendant on notice, if someone is terminally ill, they're going to be terminally ill two years in one day or one day before. I don't know really how the stale evidence and the deceased parties and the finality, the finality comes in regards to filing the lawsuit and putting them on notice. I'm not satisfied of the fact. This is not a situation as in, I believe it was Shelton, where the language is, it might be best to try, where it's almost a suggestion, a possibility. Maybe we should do this. Maybe we shouldn't. The language is, I believe, fairly clear. It is our intention in big print to pursue this matter. This is not open to discussion. So, you know, I believe counsel is trying to indicate why I bring up the word prejudice or an inequity, that somehow State Farm was prejudiced here. That somehow that notice was not sufficient and somehow they would have, the outcome of a U.M. claim would have been in their favor. If I had used the word arbitration prior to that two-year deadline. And I don't believe that's the case here. And for those reasons, I believe that the ruling of the trial court should be overturned. All right. We'll give you a couple minutes.  Thank you. May it please the Court. My name is John Adams. Adams? Adams. All right. With an S on the end. All right. Mr. Adams, let me begin with a simple question. And what is, what does State Farm require to commence in the terms of the policy? To commence arbitration? Arbitration. What, we understand your position is that the letter, certainly when it doesn't mention arbitration, wasn't sufficient. What would be sufficient under the State Farm policy to commence an arbitration request? The insured would simply have to say, I request arbitration. Okay. That's all it has to say. Could, and under the policy. Okay. And under the policy, could that be done, if you received that notice one day before the end of the two-year period, would that toll the remaining portion to that one day so that it would be timely? It would be timely. Okay. Only for arbitration, though. But not for a lawsuit? Not for a lawsuit. Right. Just for a. Well, I think it would toll it for a lawsuit as well. You're negotiating, sort of? Well, when you say lawsuit, I assume you mean a suit on the policy, not a suit, not a court suit. Right. Attack action. I think it would toll it for a suit on the policy. All right. Well, that's helpful. Let's go to asking for our assistance in Hale, the Fifth District case. Yes. Why shouldn't we take guidance from that case, or what should we do with that case? Should we reject it, or should we distinguish it? I think you should reject it. Well, let me ask you. It could be distinguished. Well, then let me. Between the two, don't you think we'd opt for that? We'd opt for that? Well, the way to distinguish it would be that Hale was an underinsured motorist case, and the Hale opinion did put some emphasis on that fact. It said, you don't know if you have an underinsured claim until you resolve the claim with the tort feature. Well, let me ask you this. In Hale, it was Liberty Mutual, right, the insurance company? Or it didn't make any difference? Country Mutual. Country Mutual. Liberty Mutual is my company. Country Mutual. But didn't the Fifth District rely, or it seemed to rely, because it set it out in its opinion, the response by Country Mutual to the letter received by it from plaintiff's counsel? I mean, it opened up a file. It gave it a file. It seemed to have triggered something in Country Mutual to treat it like an arbitration demand. Yeah, and State Farm opened up a file. I mean, they received notice of a claim within the two years. So what are they supposed to do but open up a file? They can't just ignore it. He could have gotten the State Farm. But let's say you hadn't opened up the file until a day after the two-year period. I mean, we don't know when you opened up the file or even if you'd opened up the file unless the record shows that. I don't recall. I don't know if the record shows it. I don't think it does. But State Farm did, in fact, open up a file. I don't think it's in the record. Do you know when? I mean, what if it were one day after? Because, in fact, you didn't receive the letter. State Farm did not receive the letter until after the two-year period. You received the facts. But the certified letter, I don't think, was signed for by State Farm until after the two years. I think the letter was within two years, a couple of days later, as I recall. But in any event, they received the facts. And so, I mean, they had notice. If all we're talking about is notice, then State Farm had notice. What about prejudice? Is there any requirement that you have to be prejudiced in this case? No. And I have no idea whether there's any prejudice or not. Well, to some extent, you can claim prejudice if your policy is going to be ignored. If a two-year period is going to be ignored, that's prejudicial because it undermines the policy terms, doesn't it? Well, in that sense, yes. But the case law doesn't require that there has to be prejudice to the insurer in order to implicate the requirements of the two years to either demand your arbitration or file your suit. No, the case law doesn't. Mr. Adams, I may have cut you off a little bit too quickly. I am asking for your ‑‑ how would you distinguish Hale? Oh, yes. Well, as I said, Hale was an underinsured case. And the Hale court did emphasize that fact. It said you don't know if you have an underinsured claim until you've ‑‑ That goes to damages. Or until you've gotten a judgment against the tortfeasor. Maybe you go to trial against the tortfeasor and the tortfeasor gets a not guilty. Or maybe they're satisfied with whatever policy they have. Right. And so you could distinguish Hale on that basis. And, of course, because of that, that reasoning doesn't apply to an uninsured motorist claim, which is what we have here. So that's a possible basis for distinguishing Hale. If you want to disagree with Hale, I think there are two bases for disagreeing with it. All right. Number one is it simply disregards the policy language. Hale says a notice serves whatever purpose would be served by the two‑year limit, and so we'll say that that complies with the policy. It ignores the policy language. I don't think a court is authorized to rewrite a contract, including an insurance policy, to say something different, as long as it accomplishes what the court deems to be the legitimate purposes of the policy language. The other basis is that Hale takes too narrow a view of what the statute of limitations is for. Basically, it says the only purpose of the statute of limitations is to help. You're bringing up statute of limitations, but that concerns filing suit against the tortfeasor, or are you talking statute of limitations? Well, Hale says a contractual limitations period in the policy. Okay, contractual limitations. It serves the same purpose as statute of limitations, and I think that's correct. So the question is, what is that purpose? Hale says it's simply giving notice and nothing more. And the cases have identified other purposes of a limitations period besides simply giving notice. One is getting the ball rolling in time, whether it's arbitration or litigation. Both the insurance code, section 143A, and the policy put the burden of commencing arbitration on the insured who's making the claim. And there are obviously sound reasons for doing that at an early table. And Hale simply disregards that purpose of the limitations period. So I think those are the two reasons for this court to disagree with Hale, if that's the way it's inclined to go. So are you telling us that to commence arbitration with State Farm, the only thing you have to do is send a letter? You don't have to send the name of the arbitrator? Just send a letter saying this is an uninsured motorist case, and that's enough? No, you have to say I want to arbitrate. You have to say I want to arbitrate, you don't have to say the name of the arbitrator? You have to appoint an arbitrator. I think that you can do that at a later date. Okay, and how much later? How much later? I'm sorry, with the siren out there and my aged ears. I mean, there's a number of cases out there when people filed letters with arbitrators after the two-year period that were held to be void. So you're telling me now, first time I've heard it in 50-some years that I've been doing this, that you can send a letter and say that you want to arbitrate and that's sufficient? Yeah, under the State Farm policy, that would be sufficient. Okay, and you don't have to appoint an arbitrator? Not in order to commence arbitration. Okay, when do you have to name your arbitrator? The policy doesn't say. So you can do it 100 years later? No, you have to do it within a reasonable period of time. Does it say that in your policy, a reasonable period of time? No. You can continue. Okay, I was going to use this to actually look up the policy. I can tell you your policy doesn't say when. No, it doesn't. I'm familiar with your policy. No, I am. If the insurgent requests arbitration, each party for the dispute shall select an arbitrator, and the two arbitrators so named shall select a third arbitrator. That's what the policy says. Now, requesting arbitration and selecting the arbitrator are two different things. Okay. The way the policy is written. I think there's an implied requirement of reasonableness in there. But you can say I want to arbitrate without naming an arbitrator, and if you do that within two years. They didn't do that here. They didn't do that. How did State Farm treat the letter? If it wasn't a demand for arbitration, what was it? It was just notice of a U.N. claim. They get those all the time. Typically, a lot of times when an insured gives notice of a U.N. claim, they will demand arbitration right off the outset just to protect themselves. But they often don't, especially if the claim is made just shortly after the accident. They're hoping to settle it and avoid the trouble and possible expense of appointing an arbitrator. Is that how you treated this letter, one of those cases where they're trying to settle, they're not making a demand for arbitration? Obviously, the time was about to run out. Yes. So it was a claim. It was notice of a claim. It's what we're supposed to do. Either he's going to demand arbitration or he's not. And you're waiting for the next one. Yes. You can wrap up. Okay. The plaintiff makes arguments that the limitation provision is contrary to public policy. Well, there's all kinds of cases that say it's not. We don't need to address any argument that he hasn't raised before us. It's in his brief, but we will take your response. Okay. Well, I think I don't have anything more to say that's not in the brief. All right. Thank you very much. Thank you. Counsel? So now you know exactly what State Farm says would have preserved the right to arbitrate. Or State Farm is telling us how the arbitration policy is commenced. There must be a – arbitration must be in your letter. The word arbitration. Or demand. Demand for arbitration. Maybe three words. I will indicate, just going back to the record, that the certified mailing was received on April 2nd, which was three days before the two years. It was actually received. They signed the green card, and it was returned as part of the record. Nowhere in State Farm's policy does it indicate that you have to name an arbitrator or spread that process prior to the two years. It just says you have to use the word arbitration in your letter, or demand for arbitration. But he says you didn't do that in your letter. You didn't write the word demand. I didn't use the word arbitration in any form. You used the word arbitration. Correct. In any form. And you didn't state demand either. You didn't, you know – did you demand anything, or was it simply a notice that you are counsel for their insured? If I just may have a moment. We'll look at it. We'll look at the letter. I would indicate – It's in your brief. It indicates it is our intention to pursue a U.M. claim. Okay. The word demand is not used in there. And neither is the word arbitration. Correct. All right. I will emphasize that although it is a different district, Hale does emphasize the fact that although the language was not perfect in that particular case, it did put Country Mutual, I believe it was the insurance company, on notice of the UIM claim that was being pursued there. It says verbatim, the language utilized by Hale's attorney was not perfect, but served the purpose of notifying Country Mutual. Because there's no way for the insured to make a UIM claim absent an arbitration proceeding. We conclude the timely notification of the claim is sufficient. Is there a difference between a UIM claim and a U.M. claim for purposes of distinguishing Hale? Underinsured versus uninsured? There's definitely a difference between a U.M. and a UIM claim. And Hale involved a UIM claim. You're involving a U.M. claim. That is correct. The heart of this appeal is really putting notice on the insurance company that you intend on pursuing a claim. And if the language was more stringent and it said that you need to put a written demand, or if it defined a word commenced, or if it indicated you need to name an arbitrator prior to the two years, all those are factors that should be considered. And for those reasons, I would respectfully request that the trial court be overruled on its granting of the summary judgment motion. All right. Thank you very much. The case will be taken under advisory.